ACCEPTED

FIRST COURT OF APPEALS
HOUSTON, TEXAS
1/8/2015 2:50:41 PM
CHRISTOPHER PRINI
CLERK

NO._____ 01-15-00016-CV

## IN THE COURT OF APPEALS FOR THE
## ____ DISTRICT OF TEXAS
## HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

1/8/2015 2:50:41 PM

CHRISTOPHER A. PRINE
Clerk

---

### *In re Texas Technical Services, Inc.*
*Relator*

---

## PETITION FOR WRIT OF MANDAMUS

---

Original Proceeding from Cause No. 2014-16785
*Parking Guidance Systems, LLC v. Texas Technical Services, Inc.*
In the 133rd Judicial District Court of Harris County, Texas

---

LAMBRIGHT & ASSOCIATES

Casey Jon Lambright
State Bar No. 00794136
Andrew J. Mihalick
State Bar No. 24046439
2603 Augusta, Suite 1100
Houston, Texas 77057
(713) 840-1515
(713) 840-1521 (FAX)

**ATTORNEYS FOR RELATOR**
**TEXAS TECHNICAL**
**SERVICES, INC.**

*Oral Argument Requested*

Page **1** of **50**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................2

INDEX OF AUTHORITIES.........................................................................................5

STATEMENT OF JURISDICTION...........................................................................7

STATEMENT OF THE CASE......................................................................................8

 *1. Nature of the Underlying Proceedings*..........................................................8

 *2. Respondent*................................................................................................10

 *3. Judge McFarland's Action from which TTSI Seeks Relief*............................10

ISSUES PRESENTED.................................................................................................11

 A. Did the District Court commit a clear abuse of discretion from
  which TTSI has no adequate remedy of appeal by summarily
  disqualifying the law firm of Lambright & Associates from
  continuing its service as TTSI's legal counsel given PGS'
  complete failure to establish its prerequisite evidentiary burdens
  that: ................................................................................................11

  (1) The testimony of any lawyer, much less the "firm" of
  Lambright & Associates was necessary to establish a necessary
  fact on PGS' behalf;.........................................................................11

  (2) The testimony of any lawyer, much less the "firm" of
  Lambright & Associates concerned an contested issue; and/or ....................11

  (3) That if Lambright & Associates is not disqualified, PGS
  would suffer actual prejudice?............................................................11

 B. Did the District Court commit a clear abuse of discretion from
  which TTSI has no adequate remedy of appeal by summarily
  disqualifying the entire firm of Lambright & Associates from
  serving as its legal counsel in this case and from any
  participation whatsoever in pre-trial proceedings, preparation,
  and strategy and other matters before the Court outside the
  presence of a jury? ..........................................................................11

STATEMENT OF FACTS ..........................................................................................12

ARGUMENT AND AUTHORITIES ................................................................31

    1.  *Mandamus is Appropriate to Correct an Erroneous Order Disqualifying Counsel Because there is No Adequate Remedy by Appeal* ..................................................................................................31

    2.  *Supreme Court Precedent Holds that There is No "Per Se" Disqualification Rule* ...............................................................................32

    3.  *PGS Fails to Meet Its Burdens to Prove that TTSI's Attorneys' Testimony is Necessary to Establish an Essential Fact on Behalf of Their Clients* ......................................................................................37

    4.  *Disqualification is Improper Because the Purported Evidence to be Provided by TTSI's Attorneys is on an Uncontested Issue* .......................39

    5.  *PGS Fails to Show It Will Suffer Actual Prejudice if TTSI's Attorneys are not Disqualified* ..........................................................40

    6.  *Even if Disqualified from Trial Presentation, It is an Abuse of Discretion to Bar TTSI's Counsel from Pretrial Representation* ..................40

    7.  Conclusion .........................................................................................43

PRAYER .............................................................................................................44

CERTIFICATE OF SERVICE ...........................................................................46

o     Facsimile ............................................................................................46

o     U.S. Mail ............................................................................................46

o     CMRRR ..............................................................................................46

o     Courier/Hand Delivery .....................................................................46

o     Efiling Manager .................................................................................46

CERTIFICATION ..............................................................................................47

CERTIFICATE OF COMPLIANCE ..................................................................48

APPENDIX ........................................................................................................49

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Texas Rule of Civil Procedure 52.3 (a), the following is a complete list of the real parties in interest and parties whose interest will be directly affected by the proceeding:

The Honorable Jaclanel McFarland
133rd Judicial District Court
Harris County Civil Courthouse
201 Caroline, 11th Floor
Houston, Texas 77002

***Respondent***

Texas Technical Services, Inc.
c/o Mr. Casey Jon Lambright
cjl@lambrightlaw.com
c/o Mr. Andrew J. Mihalick
ajm@lambrightlaw.com
c/o Shawn R. McKee
srm@lambrightlaw.com
Lambright & Associates
2603 Augusta, Suite 1100
Houston, Texas 77057
(713) 840-1515
(713) 840-1521 (fax)

***Relators/Defendants***

Parking Guidance Systems, LLC
c/o Mr. Mark Junell
mark@junellfirm.com
100 Waugh, Suite 350
Houston, Texas 77007
(281) 899-0241
(832) 213-1830 (fax)

***Real Party in Interest/Plaintiff***

# INDEX OF AUTHORITIES

## *Statutes and Rules*

TEX. GOV'T CODE § 22.221…………………………………..……………….........7

TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08..…26, 32, 33, 34, 35, 36, 40, 41, 42

## *Cases*

*Anderson Producing, Inc. v. Koch Oil Co.*,
929 S.W. 2d at 422………………………………………………….......32, 40, 41

*Ayres v. Canales*, 790 S.W.2d 554 (Tex. 1990)..................................31, 32, 33, 35, 36

*In re Bahn*,
13 S.W. 3d 865, 873
(Tex. App.—Houston [14th Dist.] 2000, orig. proceeding)…………................35

*In re Chu,*
134 S.W. 3d 459 (Tex. App.—Waco 2004, orig. proceeding)............................31

*In re Epic Holdings, Inc.,* 885 S.W. 2d 41,
42 Tex. Sup. Ct. J. 468 (Tex. 1992)......................................................................31

*In re Leyendecker*, 2012 Tex. App. LEXIS 6581
(Tex. App. Houston 1st  Dist. Aug. 9, 2012)......................................................35

*In re Nitla SA De CV,*
92 S.W. 3d 419, 423, 45 Tex. Sup. Ct. J. 571 (Tex. 2002)...............................31

*In re Sanders*, 153 S.W.3d 54 (Tex. 2004)...............................................30, 31, 34

*In re Villasanta,*
2011 Tex. App. LEXIS 7670, No. 01-11-00474-CV
(Tex. App.—Houston [1st Dist.] 2011, orig. proceeding)..............................34

*May v. Crofts,* 868 S.W. 2d 397, 399
(Tex. App.—Texarkana 1993, orig. proceeding)..............................31, 32, 35

*Nat'l Med. Enters. V. Godbey,*
924 S.W. 2d 123, 39 Tex. Sup. Ct. J. 698 (Tex. 1996)..................................31

*Prudential Ins. v. Financial Rev. Servs.,*
29 S.W. 3d 74, 77-78 (Tex. 2000)....................................................................40

*Spears v. Fourth Court of Appeals,* 797 S.W. 2d 654, 656,
34 Tex. Sup. Ct. J. 66 (Tex. 1990) ............................................................31, 35

*Walker v. Packer,* 827 S.W. 2d 833,
35 Tex. Sup. Ct. J. 468 (Tex. 1992)................................................................31

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this Petition for Writ of Mandamus pursuant to Texas Government Code section 22.221 (b).

**STATEMENT OF THE CASE**

## 1. *Nature of the Underlying Proceedings*

In the underlying suit, PARKING GUINDANCE SYSTEMS ("PGS") sued TEXAS TECHNICAL SERVICES, INC. ("TTSI"), for TTSI's purported tortious interference with an existing contract or prospective business relations in connection with DFW Airport terminal parking improvement projects ("DFW Airport Projects"). At issue in this mandamus is the trial court's October 6, 2014 disqualification of TTSI's legal counsel, the law firm of Lambright & Associates, on PGS' Motion.[1]

According to its Motion to Disqualify, PGS' tortious interference claims are predicated solely on communications between TTSI's counsel and DFW Airport's counsel that occurred prior to and shortly after TTSI joined PGS in a lawsuit styled as Cause No. 2012-64401, *Texas Technical Services, Inc. v. Derek Frantz, et al,* In the 129th Judicial District Court of Harris County, Texas ("the First Filed Suit"). Both lawsuits involve countervailing claims related to the same DFW Airport Project, with the suit at hand in this proceeding being filed in response to the First Filed Suit.[2]

---

[1] The 133rd District Court affirmed its disqualification of counsel at TTSI's Reconsideration Hearing held December 8, 2014.

[2] PGS is a Defendant in the 129th District Court case, accused of misappropriation of trade secrets, tortious interference, and conspiracy with a central tortfeasor of that case, Mr. Derek

PGS' Motion to Disqualify Counsel was heard in the 133rd Judicial District Court before Judge Jaclanel McFarland on October 6, 2014, the same day TTSI's Hybrid Motion for Summary Judgment was set for hearing. Judge McFarland summarily granted PGS' Motion to Disqualify the entire law firm of TTSI's counsel, disallowed any firm attorney from participating in pretrial hearings or other matters outside the presence of a jury, and summarily passed TTSI's first-filed Hybrid Motion for Summary Judgment that would have disposed of the entire case on other grounds.

On October 16, 2014, TTSI filed its Motion for Reconsideration and Rehearing, proffering new evidence in the form of the deposition testimony of PGS' corporate representative, and a more detailed discussion of the governing law so that the instant mandamus proceeding could be avoided. The Court heard TTSI's Motion for Reconsideration and Rehearing on December 8, 2014, and curiously held fast to its prior ruling—a full-scale disqualification of the law firm of Lambright & Associates from <u>any</u> participation in the case (other than potentially serving as witnesses). As a result, TTSI seeks mandamus relief.

Frantz. Previously, TTSI attempted to consolidate the two cases in the 129th District Court but PGS vigorously argued to keep the cases separate.

## 2. *Respondent*

The Respondent is the Honorable Jaclanel McFarland, Judge of the 133rd Judicial District Court of Harris County, Texas, and the presiding Judge over these proceedings.

## 3. *Judge McFarland's Action from which TTSI Seeks Relief*

TTSI seeks mandamus relief from this Court vacating Judge McFarland's October 6, 2014 Order (and its December 8, 2014 reaffirmation thereof) that completely disqualified the law firm of Lambright & Associates from serving as legal counsel for TTSI in any capacity and under any circumstances (even outside the presence of a jury) in this case.[3]

---

[3] *Exhibit 1, Disqualification Order.*

# ISSUES PRESENTED

A. Did the District Court commit a clear abuse of discretion from which TTSI has no adequate remedy of appeal by summarily disqualifying the law firm of Lambright & Associates from continuing its service as TTSI's legal counsel given PGS' complete failure to establish its prerequisite evidentiary burdens that:

    (1)    The testimony of any lawyer, much less the "firm" of Lambright & Associates was necessary to establish a necessary fact on PGS' behalf;

    (2)    The testimony of any lawyer, much less the "firm" of Lambright & Associates concerned an contested issue; and/or

    (3)    That if Lambright & Associates is not disqualified, PGS would suffer actual prejudice?

B. Did the District Court commit a clear abuse of discretion from which TTSI has no adequate remedy of appeal by summarily disqualifying the entire firm of Lambright & Associates from serving as its legal counsel in this case and from any participation whatsoever in pre-trial proceedings, preparation, and strategy and other matters before the Court outside the presence of a jury?

## STATEMENT OF FACTS

### *Introduction*

PGS, Plaintiff below, filed its tortious interference lawsuit against TTSI on or about March 27, 2014, well after being served with a tortious interference, trade secret misappropriation, and conspiracy lawsuit in a case pending in the 129th District Court since October 29, 2012.[4] At the center of the claims between the parties in these two lawsuits is an ongoing sole-source construction project at DFW Airport worth millions of dollars and whether Derek Frantz, the original defendant in the First Filed Suit and former employee of TTSI, may participate in any capacity therewith.[5] PGS bases the entirety of its later-filed case on the proposition that communications between TTSI's legal counsel and DFW Airport's counsel concerning Mr. Frantz' involvement in DFW Airport projects constituted tortious interference with PGS.[6]

---

[4] *Exhibit 2, TTSI's Response to PGS' Motion to Disqualify Counsel, pp. 2-4 (¶¶ 6-12) and Exhibits referenced therein; Exhibit 3, Case Details Report (Cause No. 2014-16785, 133rd Dist. Court).*

[5] *Id.*

[6] *Exhibit 3, Case Details Report (Cause No. 2014-16785, 133rd Dist. Court); Exhibit 4, PGS' 1st Amended Petition; Exhibit 5, PGS' Motion to Disqualify Counsel, pp. 1-4, 8-11, 14; Exhibit 6, October 6, 2014 Hearing Transcript, 4:19-5:18, 9:12-11:9, 26:19-27:17; Exhibit 7, December 8, 2014 Hearing Transcript, 11:18-12:12.*

On October 6, 2014, on the same day TTSI's Hybrid Motion for Summary Judgment was set for hearing, the 133rd District Court summarily disqualified the entire law firm of Lambright & Associates on PGS' Motion, notwithstanding PGS' complete failure to meet its prerequisite burdens as clearly established by Texas case law.[7]  In doing so, the District Court pointed to no facts or law supporting its arbitrary decision.[8]  TTSI sought reconsideration of the disqualification order based on a renewed presentation of governing case law and new evidence in the form of PGS' corporate representative testimony that was previously unavailable.[9] On December 8, 2014, the District Court inexplicably affirmed its disqualification order, thus giving rise to this original mandamus proceeding.[10]

### *The First Filed Suit and Judge Gomez' Injunctions*

Almost a year and a half prior to the instant lawsuit being filed, TTSI sued PGS in the First Filed Suit.[11]  On October 29, 2012, in the 129th District Court,

---

[7] *Exhibit 6, October 6, 2014 Hearing Transcript, 28:4; Exhibit 1, Disqualification Order; c.f. Exhibit 5 PGS' Motion to Disqualify TTSI's Counsel; Exhibit 2, TTSI's Response to PGS' Motion to Disqualify Counsel.*

[8] *Exhibit 6, October 6, 2014 Hearing Transcript, 28:4; Exhibit 1, Disqualification Order.*

[9] *Exhibit 8, TTSI's Motion for Reconsideration and Rehearing.*

[10] *Exhibit 7, December 8, 2014 Hearing Transcript, 29:16-30:17.*

[11] *Exhibit 2, TTSI's Response to PGS' Motion to Disqualify Counsel p. 3, Exhibit "A" thereto, TTSI's Application for Temporary Restraining Order and Petition for Injunction and Damages (First Lawsuit), and Exhibit "D" thereto, TTSI's 4th Supplement to Its Original Petition, (First Lawsuit), attached thereto.   Until a few months ago, the First Lawsuit was set for a preferential-*

TTSI sued its former employee Derek Frantz, to enforce contractual and common law non-compete and non-disclosure covenants/duties, as well as other related causes of action.[12]  In First Filed Suit, Judge Gomez of the 129th District Court has issued multiple temporary injunctions regarding Mr. Frantz and his continued participation in projects he worked on while employed by TTSI, and prohibits him from otherwise misusing TTSI's trade secrets.[13]  On April 22, 2013—almost a year before the instant suit was filed—Judge Gomez discussed his November 2012 injunctive proscriptions against Mr. Frantz:[14]

> THE COURT: I agree. I mean, it was always the
> Court's understanding that, that he wasn't, he shouldn't be
> working with or on the DFW project in Dallas. Right. I meant,
> that was my understanding and I think it was everybody's
> understanding at previous hearings.

---

type trial setting commencing October 6, 2014; currently, it is set on the Court's two-week docket commencing April 18, 2015.  *C.f., Exhibit 3, Case Details Report (Cause No. 2014-16785, 133rd Dist. Court); Exhibit 4, PGS' 1st Amended Petition; Exhibit 9, TTSI's First Amended Answer and Counter-Claim.*

[12] Id.

[13] *Exhibit 2, TTSI's Response to PGS' Motion to Disqualify Counsel p. 3, Exhibit "B" thereto, November 30, 2012 Temporary Injunction (First Lawsuit), Exhibit 'C," October 7, 2013 Supplemental Temporary Injunction (First Lawsuit), attached thereto.*

[14] *Exhibit 2, TTSI's Response to PGS' Motion to Disqualify Counsel, p. 5 (¶ 14) and Exhibit "J" thereto, April 22, 2013 Hearing Transcript [2012-64401, Texas Technical Services, Inc. v. Frantz, et al; In the 129th Judicial District Court of Harris County Texas], 75:8-12.*

## *Attorney Letters in the First Filed Lawsuit*

Since first obtaining injunctive relief in the First Lawsuit, TTSI attorneys have periodically communicated with DFW Airport's counsel and provided copies of court rulings and updates as to the status of the First Filed Suit.[15]

## *TTSI Joins PGS in Its First Filed Suit;*
## *PGS Responds by Filing the Instant Suit*

On February 5, 2014, upon learning that PGS was using Mr. Frantz in its efforts to secure a role on the DFW Airport project, TTSI joined PGS and Mr. Frantz' wife, its principal, as co-conspirators and confederates of Mr. Frantz into the First Filed Lawsuit.[16] In retaliation, almost two (2) months later, PGS filed the instant lawsuit in the 133rd District Court, setting forth its own tortious interference claims against TTSI in relation to the same DFW Airport Project forming a basis for TTSI's claims in the First Filed Suit—solely based on correspondence between TTSI and DFW Airport attorneys.[17] TTSI filed its Original Answer on March 28,

---

[15] *Exhibit 2, TTSI's Response to PGS' Motion to Disqualify Counsel, Exhibit "E" thereto, Attorney Correspondence.* As shown *infra,* this correspondence between lawyers concerning the 129th District Court's injunctions is what PGS bases its entire lawsuit upon.

[16] *Id.* at p. 3 and *Exhibit "D" thereto, TTSI's 4th Supplement to Its Original Petition (First Lawsuit).*

[17] *Exhibit 3, Case Details Report (Cause No. 2014-16785, 133rd Dist. Court).* PGS amended its Petition on September 29, 2014. *Id; Exhibit 4, PGS' First Amended Petition.* Notably, PGS is represented by the same counsel in both cases, has actively participated in the First Filed Suit.

2014,[18] and its Amended Answer on August 10, 2014.[19]  In its Amended Answer, TTSI sets forth its affirmative defenses of justification and privilege, amongst others, given that exercise of a legal right (e.g., communications with a third party concerning orders in a pending lawsuit) is not actionable.

### *TTSI's Attorneys' Communications with DFW Prior to Suit*

Prior to PGS' disqualification motion and the first hearing, TTSI *sua sponte* produced all of the correspondence between its attorneys on the one hand, and parties involved with DFW Airport Projects on the other.[20] The contents of communications between two (2) of Lambright & Associates attorneys and DFW Airport's counsel leading  up to and including TTSI's joinder of PGS in First Filed Lawsuit are uncontested; they are what they are.

On the face of these documents are the names and contact information of the parties with whom TTSI's attorneys were communicating.[21]  Because the core of PGS' tortious interference claim is that DFW Airport rescinded a contract or ended a business relationship, the person(s) with essential evidence PGS' needs to prove its case are representatives of DFW Airport who ended the purported relationship.

---

[18] *Exhibit 3, Case Details Report (Cause No. 2014-16785, 133rd Dist. Court).*

[19] *Exhibit 10, TTSI's 1st Amended Answer.*

[20] *E.g., Exhibit 2, TTSI's Response to PGS' Motion to Disqualify Counsel, Exhibit "E" thereto, Attorney Correspondence.*

[21] *Id.*

The testimony of TTSI attorneys who wrote letters is not; neither TTSI nor its lawyers can offer admissible evidence as to why DFW Airport (or anyone else) ended a prospective business relationship.

### *TTSI Files its Hybrid Motion for Summary Judgment*

On September 15, 2014, a few weeks prior to taking PGS' corporate representative's deposition, TTSI filed its Hybrid Motion for Summary Judgment, which challenged PGS' tortious interference claims and asserted traditional summary judgment arguments on its affirmative defenses of justification and privilege.[22] The PGS corporate representative deposition transcript, received by TTSI on October 13, 2014 (after the first hearing but prior to the rehearing on disqualification), completely supports the Hybrid Motion for Summary Judgment, as cited *infra.*

### *PGS Responds with a Motion to Disqualify Counsel Based Solely on TTSI's Attorneys' Correspondence with DFW Airport Concerning Judge Gomez' Injunctions*

On September 29, 2014, in response to TTSI's Hybrid Motion for Summary Judgment, PGS filed its (1) Motion to Disqualify Counsel,[23] (2) Motion for

---

[22] *Exhibit 2, TTSI's Response to PGS' Motion to Disqualify Counsel, pp. 9-11; Exhibit 3, Case Details Report (Cause No. 2014-16785, 133rd Dist. Court* The hearing was set for October 6, 2014 at 11:00 a.m.; PGS, however, was able to "jump" the summary judgment hearing by interspersing its Motion to Disqualify Counsel for an hour earlier the same day. *Id; See* discussion, *infra.* Notably, the deposition transcript for PGS' corporate representative was not available until after the October 6, 2014 hearing.

[23] *Exhibit 5, PGS' Motion to Disqualify Counsel.*

Continuance of Summary Judgment Hearing,[24] and (3) Response to TTSI's Hybrid Motion for Summary Judgment,[25] and set these matters for hearing on the same day of TTSI's Hybrid Summary Judgment Hearing <u>but one hour earlier</u>. [26] PGS has stipulated that it bases the entirety of its case on the First Filed Suit Correspondence and the proposition that TTSI's counsel is the sole source of essential facts as the "primary tortfeasors."[27] According to PGS, this warrants the complete and unequivocal disqualification of the law firm of Lambright & Associates from <u>any</u> participation whatsoever in TTSI's defense in this case.[28]

For example, in its Motion to Disqualify Counsel, PGS cites the following portion of a letter sent by one of TTSI's attorneys to DFW Airport the day TTSI joined PGS and its principals in the First Filed Suit:[29]

> **We have learned that DFW intends to award the sole-source terminal D parking guidance contract to Parking Guidance Systems, LLC**-Derek Frantz' (via his wife) company. Derek is heavily involved in this company, and now they have been joined in

---

[24] *Exhibit 3, Case Details Report (Cause No. 2014-16785, 133rd Dist. Court.*

[25] *Id.*

[26] *Supra* fn 23, 24, 25 In these pleadings, PGS failed to adduce any evidence to support the proposition that (1) there was a valid, existing contract upon which to base the tortious interference with an existing contract claim, or (2) any evidence that independently tortious acts of TTSI's counsel <u>proximately caused</u> PGS to lose DFW Airport business. *Id.*

[27] *Exhibit 5, PGS' Motion to Disqualify Counsel, p. 8.*

[28] *Id.*

[29] *Exhibit 5, PGS' Motion to Disqualify Counsel, pp. 8-10.*

our lawsuit. **I was under the impression from the below correspondence and past telephone conversations that DFW would not be doing business with Frantz**. Given your explanation to me that the reason behind the sole source contract was that they were the contracting party on Terminal A, and that your concern was whether Derek Frantz could be involved given our litigation, **I find it extremely interesting that DFW decided to award it to PGS**, who as an entity had no prior history with DFW (given the fact it was set up by Derek's wife and a friend only last May). **Maybe your client's diligence as to the party they were contracting with (PGS) wasn't as thorough as it needed to be.**

Notably, the above-quoted email set forth by PGS as the basis of its claim against TTSI is the first instance PGS was mentioned in any of the First Filed Lawsuit Correspondence.[30]

### *TTSI Takes PGS' Corporate Representative's Deposition*

Having the benefit of holding TTSI's Hybrid Motion for Summary Judgment in its hands, PGS offered its corporate representative's deposition on October 6, 2014. In his deposition, PGS' corporate representative testified that PGS (1) had no underlying contract, nor (2) any evidence to support the causation element of its tortious interference claims:[31]

<u>No Underlying Contract or Causation</u>

29

Q. No one on behalf of DFW ever actually tendered a contract for PGS to sign, did they?

---

[30] *Exhibit 2, TTSI's Response to PGS' Motion to Disqualify Counsel, Exhibit "E" thereto, Attorney Correspondence.*

[31] *Exhibit 8, TTSI's Motion for Reconsideration and Rehearing, pp. 6-7 (¶ 17) and Exhibit 7 thereto, PGS Corporate Representative Deposition Transcript, e.g., 29:8-25, 33:8-13, 131:5-9.*

A. No.

Q. In fact, DFW never signed any contract with PGS, did they?

A. That would be a question you'd have to ask DFW.

Q. Okay. Well, PGS never received a signed contract from anyone on behalf of DFW, did they?

A. Correct.

Q. And did anyone on behalf of DFW ever submit a sample contract to begin negotiating specific terms with PGS and DFW?

A. I'm sorry. Repeat that question.

Q. Did anyone on behalf of the DFW Airport system send a proposed contract so that specific terms could be negotiated to come up with a specific document that then could be signed?

A. No, they didn't.

…

33

Q. (BY MR. LAMBRIGHT) Well, did you ever sign a contract with anyone on behalf of DFW that they signed, accepted, and sent back to you?

A. No.

Q. Did they ever sign your contract proposal?

A. No.

…

131

Q. (BY MR. LAMBRIGHT) And you don't know whether they even formalized a final document for execution, do you?

MR. JUNELL: Objection, form.

A. I don't know what they did.

<u>No Knowledge of Lambright & Associates' "Threats"</u>

PGS' corporate representative further testified that nothing in the First Filed

Lawsuit Correspondence amounted to a threat of legal action against DFW:[32]

121

Q. Oh, okay. Have you ever seen anything from my
law firm or anybody at TTSI that says, if you do X,

122

we're going to sue you?
   A. No.
   Q. Have you seen anything in this lawsuit that
says, DFW, if you deal with PGS, we're going to bring
you into this lawsuit?
   A. No.
   Q. Have you seen anything that would lead you to
believe that threats were actually made to DFW to bring
them into the lawsuit if they dealt with PGS?
   A. No.

<u>PGS Knows Identities of DFW Airport Representatives Who
Have Evidence of Essential Facts for Its Case (e.g., Causation)</u>

Notwithstanding the foregoing, PGS' corporate representative also testified

that he knew the DFW Airport representatives who told him PGS could not work

---

[32] *Exhibit 8, TTSI's Motion for Reconsideration and Rehearing, pp. 6-7, 9-10 (¶¶ 17, 22) and Exhibit 7 thereto, PGS Corporate Representative Deposition Transcript, e.g., 121:25-122:10.*

on the DFW Airport Projects—persons without whom PGS cannot hope to prove causation for its underlying claims:[33]

35

Q. I heard you say that DFW will not allow PGS to

36

participate in any of the other projects at the DFW Airport. Is that fair and accurate of your statement?
    A. Yes.
…
    Who at DFW or on their behalf has told you or anyone at PGS that PGS cannot participate in any of the terminal projects at DFW?
    A. Scott Kutchins, Jamie Rohr.

…

37

Q. Who at DFW told anyone at PGS that you couldn't bid on Terminal E?
    A. Scott Kutchins, Jamie Rohr.
    Q. Okay. They both told you or someone on behalf of PGS that PGS could not bid Terminal E?
    A. They told PGS that PGS would no longer be able to provide or perform work at DFW Airport now or in the future.

…

120

Q. (BY MR. LAMBRIGHT) As to whether it's a legal basis, political basis, Mr. Frantz's involvement, or what the actual reason that caused them not to do or want to do business with PGS at that time or in the

---

[33] *Exhibit 8, TTSI's Motion for Reconsideration and Rehearing, pp. 11-13 (¶ 25) and Exhibit 7 thereto, PGS Corporate Representative Deposition Transcript, e.g., 35:25-36:1-3, 36:9-12 37:14-21, 120:11-121:12, 132:9-18, 133:3-7.*

future, you weren't involved in any of those conversations or any of those meetings, correct?

MR. JUNELL: Objection, form.

A. So you're asking like a whole lot of questions in one question there. So --

Q. (BY MR. LAMBRIGHT) Let me break it down. We'll be here all day. I'm trying to, like, speed this thing up a little bit.

The meetings that were had at DFW regarding not doing business with Parking Guidance Systems, LLC, at the time or into the future, whatever those internal

conversations were at DFW, you were not a party to any of them?

MR. JUNELL: Objection, form.

A. Correct.

MR. LAMBRIGHT: Basis?

MR. JUNELL: Asked and answered.

Q. (BY MR. LAMBRIGHT) And as such you don't know what went on in those meetings other than what Mr. Caput told you, do you?

MR. JUNELL: Same objection.

A. Correct.

MR. LAMBRIGHT: I finally got an answer.

…

Q. Okay. We talked about this earlier. What document or evidence of any sort does PGS have to say there was ever actually any threats?

A. We don't have any documents that indicate that. We have conversations with the lead attorney, Robert Caput, at DFW Airport.

Q. Okay. So you're saying this threat is something oral that Robert told you somebody said to him?

A. No.

…

Q.  Is there any documentation you have ever seen about any actual threat of litigation?
A.  Not that I've seen.
Q.  Okay.  Not that PGS has seen?
A.  Correct.

Nonetheless, counsel for PGS has repeatedly stated that the only evidence he needs for his case is the testimony of TTSI's counsel on the subject of the First Filed Correspondence.[34]

### *The First Disqualification Hearing (October 6, 2014)*

On October 6, 2014, the 133rd District Court took up PGS' Motion to Disqualify Counsel, first.[35]  During its evaluation of the Motion, Judge McFarland repeatedly asked for clarification of the proceedings and injunctions of the First Lawsuit, apparently taking the position that the interpretation of the First Lawsuit would be outcome-determinative:

> THE COURT: I have no problem with that.
> I think you're exactly right on the law on that. My
> question is and that's why I was asking you about the
> Temporary Injunction, is that Judge Gomez entered in the
> case in his court is -- and I still have looked at it.

---

[34] *E.g., Exhibit 5, PGS' Motion to Disqualify Counsel, pp. 8-11;  Exhibit 7, December 8, 2014 Hearing Transcript, 24:25-29:13.*

[35] *Exhibit 6, October 6, 2014 Hearing Transcript, 28:14-19.*

I'm still not sure. Does it provide that Mr. Frantz
cannot work on anything that he learned at Texas -- that
violates his technological services rights, or if he
forms another company where he's one of the primary
people like he and his wife or maybe a third-party that
they can't either, or I thought I read somewhere where it just said it was
basically a certain number of counties that he couldn't do that in.[36]

In fact, a majority of the October 6, 2014 hearing dealt with the District Court asking the respective parties what happened in the First Filed Suit and the interpretation of Judge Gomez' two (2) injunction orders.[37]

Neither in its motion nor at the hearing did PGS show (1) how TTSI's counsel possessed essential evidence necessary for TTSI (or anyone else) in this case, (2) that the essential evidence possessed by TTSI's counsel pertained to a contested matter; or that (3) PGS would suffer prejudice should it call TTSI to testify in this case. Arbitrarily, Judge McFarland summarily and without any supporting evidence or applicable law disqualified the entire staff of the law firm

---

[36] *Exhibit 6, October 6, 2014 Hearing Transcript, 5:19-9:11, 19:2-24:13; see Exhibit 2, TTSI's Response to PGS' Motion to Disqualify Counsel, Exhibit "B" thereto, November 29, 2012 Temporary Injunction* (listing "Indect" and "DFW" as being on the list of specific projects Frantz was prohibited from working on vis-à-vis injunction) *and Exhibit "C" thereto, October 7, 2013 Supplemental Temporary Injunction* (expressly incorporating the list attached to the November 29, 2012 TI as being prohibited).

[37] Counsel for PGS made it clear that the instant suit is derivative of the First Filed Suit, and bases his arguments in the instant suit largely on his subjective interpretation of the underlying facts and Judge Gomez' orders in that suit. *E.g., Exhibit 6, October 6, 2014 Hearing Transcript, 4:19-10:5.*

of Lambright & Associates from serving as counsel for TTSI in any capacity and at any time (even outside the presence of the jury) in the instant suit:[38]

> [*Casey Lambright*:]
> … The Government Code requires for public projects there to be an open bidding process unless you've already demonstrated the system that you're going to use and you don't change the system. So when Mr. Frantz runs around the back door and just slips in a different contract with a different company name, and the company that finds out about it and they go, woe, woe, woe. We can't do business with you because that will cost us a jillion dollars to go back out to the public bid, etc.
>
> That's why causation and why somebody at DFW is important. They don't want to go there. They want to say these letters from these lawyers. That's our whole case which doesn't give them causation. It may give them all the facts. And if we wrote letters -- let's say our letters were horrible, Judge. And we wrote, We will send snipers after you. And when he is opening the letter, his coffee cup breaks cause some sniper put a bullet through it. We with malintent tried to keep them from signing that. He picks up a pen; we shoot the pen out of his hand. Maybe battery, etc. But in and of itself, you still need somebody from DFW to come and say --
>
> THE COURT: This is why we did --
> MR. LAMBRIGHT: -- that's the necessary evidence. They can't say, Oh, wait because something you're not disputing. And Rule 3.08 says, The lawyer has to be producing -- be an essential element or essential fact witness for his client. We're not putting on -- he has to prove this, but he has to go further by saying

---

[38] *Id.* at 28:4-20. Counsel for PGS pointed the deficiencies in PGS' Motion throughout both hearings, to no avail. *E.g., Exhibit 6, October 6, 2014 Hearing Transcript,* 12:13-17:5, 21:14-22:19, 24:15-26:16; *Exhibit 7, December 8, 2014 Hearing Transcript, 7:98:13, 20:24-21:7, 24:12-26:9, 29:3-13; Exhibit 1, Disqualification Order.*

this is something I'm going to use in my cause of action. I'm going to now disqualify the other lawyer. That is what the Supreme Court said you can't do. The key here is that piece. That Robert Caput is that necessary piece. Not these letters. That's why we --
*THE COURT:* Okay. I got it and y'all have been double-teaming.

…

*THE COURT:* I'm going to grant his motion.
*MR. LAMBRIGHT:* Can we get that record? How quickly?
*THE COURT:* I know.
*MR. LAMBRIGHT:* The Supreme Court is clear on that.
*THE COURT:* Well, you know, and I have done them both ways and I've denied it. But I'm going to grant this one and let's see what the Court of Appeals says.
*MR. JUNELL:* And Judge, can I ask you just a procedural question? We have a No Evidence Motion that they set for --
*THE COURT:* We're not going to hear those today. Thank you. Let's see what the Court of Appeals says and then we'll come back. (Proceedings concluded.)[39]

### *The 2ⁿᵈ Disqualification Hearing: December 8, 2014*

Believing that the Court may have been confused given the complicated and dense factual background of these disputes (that to date have been before three (3) different courts in one form or fashion), and upon obtaining the deposition transcript of PGS' corporate representative, TTSI filed its Motion for Rehearing

---

[39] *Exhibit 6, October 6, 2014 Hearing Transcript*, 25:7-26:18. 28:4-20.

and Reconsideration of Disqualification of Counsel on October 16, 2014.[40] The Motion was heard by the Court at its next available hearing—December 8, 2014.[41] This time, TTSI had the PGS corporate representative's deposition transcript.[42]

Despite clear evidence by PGS' corporate representative that demonstrated the dubious nature of the underlying claim,[43] and the overwhelming case law out of Houston appellate courts and the Texas Supreme Court,[44] the District Court once again affirmed its previous blanket disqualification of the entire firm of Lambright & Associates from <u>any</u> participation in the suit other than as potential witnesses, offering no legal or factual basis for doing so:

> *THE COURT:* Okay. That's enough. I
> mean, y'all have been doing this for 30 minutes. I
> gave you an hour or so before. My ruling stands. If
> y'all want to work on an order that says that you can
> work on a case but not be -- not represent them in
> court in front of a jury, I don't really have a big
> problem with that. But you're still disqualified
> until y'all give me another order.
> Your Motion to Reconsider is denied at this
> point. If you want to mandamus me, that's fine. It
> happens every week -- well, maybe not every week.

---

[40] *Exhibit 8, TTSI's Motion for Reconsideration and Rehearing.*

[41] *Exhibit 7, December 8, 2014 Hearing Transcript.*

[42] *Exhibit 8, TTSI's Motion for Reconsideration and Rehearing.*

[43] *Exhibit 8, TTSI's Motion for Reconsideration and Rehearing, pp. 6-14 (¶¶ 17-26), Exhibit 7 thereto, PGS Corporate Representative Deposition Transcript, 29:8-25, 33:3-13, 35:25-36:24, 37:14-38:5, 120:11-121:12, 121:24-122:10, 130:20-131:9, 132:9-18, 133:3-7.*

[44] *Exhibit 8, TTSI's Motion for Reconsideration and Rehearing, pp. 14-24.*

Sometimes three times a week.

*MR. LAMBRIGHT:* Your Honor, one of the things I would ask in this process, due to the fact that I for some reason don't know if it's -- and it's -- based on our conversations, I don't know if it's going to be real likely that we have an agreed order we can submit --

*THE COURT:* Okay.

*MR. LAMBRIGHT:* -- in any kind of timely fashion.

*THE COURT:* Well, I'm not going to change --

*MR. LAMBRIGHT:* I mean, I can hold out hope.

*THE COURT:* I'm not going to change my order at this point.[45]

Separating a party from counsel of its choice is one of the severest penalties one can impose on a party.[46] This is especially true where the movant for disqualification has not and cannot rebut a summary judgment challenge on a separate issue that is dispositive to the entire case.[47] The docket sheet for the First Lawsuit covering years of litigation regarding DFW Airport and Mr. Frantz' involvement demonstrates the amount of time, experience, familiarity TTSI's

---

[45] *Exhibit 7, December 8, 2014 Hearing Transcript, 29:16-30:17.*

[46] *Infra* fn 49.

[47] *Id.* Dispositively, PGS refuses to acknowledge that the evidence it must have to survive, let alone prevail at trial, is causation—that is, admissible evidence that the contract/business relationship it claims to have lost was lost because of the communications by TTSI's counsel (forgetting for the moment its failure to prove up the existence of an underlying contract or prospective business relationship, or that the acts of TTSI's counsel were independently tortious). *E.g., Exhibit 2, TTSI's Response to PGS' Motion to Disqualify Counsel, p. 13; Exhibit 8, TTSI's Motion for Reconsideration and Rehearing, pp. 6-8.*

counsel have with this case, and is indicative of the degree of prejudice it faces in having to bring in new counsel.[48] Because Judge McFarland's disqualification of TTSI's counsel and other lawyers in the firm amounts to a complete misapplication of governing law and a clear abuse of discretion for which TTSI has no remedy by appeal, this Court must grant the writ and vacate her disqualification order, and/or issue a mandate that she revise said order to permit the attorneys at Lambright & Associates to continue representing their client, TTSI, in the pretrial stage of this case and to table its determination of whether its counsel, much less other firm attorneys, may serve as trial counsel after pretrial is completed.

---

[48] *Exhibit 10, Case Details Report (Cause No. 2012-64401, 129th District Court).*

## ARGUMENT AND AUTHORITIES

### 1. *Mandamus is Appropriate to Correct an Erroneous Order Disqualifying Counsel Because there is No Adequate Remedy by Appeal*

According to a 2004 Texas Supreme Court mandamus case vacating an appellate court's mandate to disqualify counsel:[49]

> Mandamus is appropriate to correct an erroneous order disqualifying counsel because there is no adequate remedy by appeal. *See In re Epic Holdings, Inc., 985 S.W.2d 41, 52, 42 Tex. Sup. Ct. J. 235 (Tex. 1998)* (citing *Nat'l Med. Enters. v. Godbey, 924 S.W.2d 123, 133, 39 Tex. Sup. Ct. J. 698 (Tex. 1996)*). In determining whether the trial court abused its discretion with respect to resolution of factual matters, we may not substitute our judgment for that of the trial court and may not disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Walker v. Packer, 827 S.W.2d 833, 839-40, 35 Tex. Sup. Ct. J. 468 (Tex. 1992)*. A trial court also abuses its discretion if it fails to analyze or apply the law correctly. *Id. at 840.*

In *In re Sanders,* the Texas Supreme Court went on to state:[50]

> **We have said that "disqualification is a severe remedy."** *Spears v. Fourth Court of Appeals, 797 S.W.2d 654, 656, 34 Tex. Sup. Ct. J. 66 (Tex. 1990).* **Disqualification is a measure that can cause immediate harm by depriving a party of its chosen counsel and disrupting court proceedings.** *In re Nitla S.A. De C.V., 92 S.W.3d 419, 423, 45 Tex. Sup. Ct. J. 571 (Tex. 2002).* <u>***Thus, "mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice" to merit disqualification.***</u> *Spears, 797 S.W.2d at 656.* **The fact that a lawyer serves as both an advocate and a witness does not in itself compel disqualification**. *See Ayres, 790 S.W.2d at 557-58; In re Chu,*

---

[49] *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004) (orig. proceeding).

[50] *Id.*

*134 S.W.3d 459, 464* (Tex. App.-Waco 2004, orig. proceeding); *May v. Crofts, 868 S.W.2d 397, 399 (Tex. App.-Texarkana 1993, orig. proceeding).*

As shown, *infra,* the District Court misapplied the law governing attorney-witness disqualification, resulting in improperly depriving TTSI of its long-standing counsel.

### 2. *Supreme Court Precedent Holds that There is No "Per Se" Disqualification Rule*

TTSI submits that the trial court could reasonably have reached only one conclusion in considering whether to disqualify its counsel in this case—denial of PGS' Motion.[51]   PGS represented to the trial court that a rote application of Disciplinary Rule 3.08 is all that is needed to disqualify TTSI's counsel.[52]   PGS could not be any more incorrect.   The *Sanders* Court set forth the law on this subject:[53]

> ***Disciplinary Rule 3.08* was promulgated as a disciplinary standard rather than one of procedural disqualification**, but we have recognized that the rule provides guidelines relevant to a disqualification determination. *Anderson Producing Inc. v. Koch Oil Co., 929 S.W.2d 416, 421, 39 Tex. Sup. Ct. J. 582 (Tex. 1996)* (citing *Ayres v. Canales, 790 S.W.2d 554, 556 n.2, 33 Tex. Sup. Ct. J. 504 (Tex. 1990)).* The rule states in part:

---

[51] *Generally, Exhibit 2, TTSI's Response to PGS' Motion to Disqualify Counsel; Exhibit 7, October 6, 2014 Hearing Transcript;  Exhibit 7, December 8, 2014 Hearing Transcript; Exhibit 8, Motion for Reconsideration and Rehearing.*

[52] *Id.*

[53] *Sanders,* 153 S.W. 3d at 56-57 (emphasis added).

(a) A lawyer shall not accept or continue employment as an advocate before a tribunal in a [**4] contemplated or pending adjudicatory proceeding if the lawyer [*57] knows or believes **that the lawyer is or may be a witness necessary to establish an essential fact <u>on behalf of the lawyer's client,</u>** unless:

**(1) the testimony relates to an uncontested issue;**

(2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;

(3) the testimony relates to the nature and value of legal services rendered in the case;

(4) the lawyer is a party to the action and is appearing pro se; or

(5) the lawyer has promptly notified opposing counsel that the lawyer expects to testify in the matter and disqualification of the lawyer would work substantial hardship on the client

TEX.DISCIPLINARY R.PROF'L CONDUCT 3.08(a), *reprinted in* TEX.GOV'T CODE, tit. 2, subtit. G app. A (TEX. STATE BAR R. art. X, § 9).

*Disqualification is only appropriate if the lawyer's testimony is "necessary to establish an essential fact."* TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a). **<u>Consequently, the party requesting disqualification must demonstrate that the opposing lawyer's dual roles as attorney and witness will cause the party actual prejudice.</u>** *Ayres, 790 S.W.2d at 558.*

In this case, TTSI does not seek to elicit testimony of its attorneys at all, much less is such testimony necessary to establish "essential facts" on its behalf.[54] Concomitantly, PGS made no attempt to show the trial court *how* such testimony is necessary to TTSI—because it is not necessary. PGS may *believe* the testimony of TTSI's counsel and concomitant disqualification scenario would be beneficial to its case because their entire suit rests on the proposition that the First Filed Suit Correspondence involving TTSI's attorneys was independently tortious and not privileged or justified. However, the correspondence has been produced and its existence (and contents) undisputed.

This begs the question, how is the testimony of *any attorney,* much less *the entire law firm* of Lambright & Associates necessary to establish any essential contested fact on TTSI's behalf? The answer is simple: it is not necessary, and PGS failed to meet its requisite, preliminary burden. Had the 133rd District Court followed *stare decisis* on attorney-witness disqualifications pursuant to Ethics Rule 3.08, it would have denied the motion.[55] Instead, the Court arbitrarily and without

---

[54] *E.g., Exhibit 2, TTSI Response to PGS' Motion to Disqualify Counsel, pp.8, 13; Exhibit 8, TTSI's Motion for Reconsideration and Rehearing, pp. 15-22.*

[55] *E.g., In re Villasanta,* 2011 Tex. App. LEXIS 7670, No. 01-11-00474-CV (Tex. App.— Houston [1st Dist.] 2011, orig. proceeding) (finding that disqualification was improper where moving party below could not establish that opposing counsel's testimony was necessary to establish essential facts necessary to opposing counsel's client given that the information was available from other sources, and that movant did not show any specific prejudice to permitting opposing counsel's continued representation in the case).

reference to governing law disqualified the entire law firm representing TTSI in this case as to <u>any</u> participation whatsoever, regardless of whether a jury is present.

In *Sanders,* the Texas Supreme Court admonished trial courts to hold the disqualification movant to its burden, as the danger of litigants misusing disqualification is very real:

> **Without these limitations, the rule could be improperly employed "as a tactical weapon to deprive the opposing party of the right to be represented by the lawyer of his or her choice."** TEX. DISCIPLINARY [**6] R. PROF'L CONDUCT 3.08 cmt. 10 (stating that a lawyer "should not seek to disqualify an opposing lawyer by unnecessarily calling that lawyer as a witness").
>
> …
>
> **We have stated that Rule 3.08 should not be used tactically to deprive the opposing party of the right to be represented by the lawyer of his or her choice,** *Ayres, 790 S.W.2d at 557*, **and have condemned disqualifications based upon "speculative and contingent allegations."** *Spears, 797 S.W.2d at 658.* [56]

---

[56] *Id.* at 57 (emphasis added). The 1st and 14th Circuits follow this line as well. *E.g., In re Leyendecker,* 2012 Tex. App. LEXIS 6581, **5-7 (Tex. App.—Houston [1st Dist.] 2012) (finding that the fact a lawyer serves as both a witness and counsel in a case does not in itself compel disqualification, and that party seeking disqualification must establish lawyer's dual role as attorney and witness will cause it actual prejudice); *In re Bahn,* 13 S.W. 3d 865, 873 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding) (finding "Disqualification is a severe remedy…The courts must adhere to an exacting standard when considering motions to disqualify so as to discourage their use as a dilatory trial tactic," and that "<u>Rule 3.08 does not prohibit the lawyer who may or will be a witness from participating in the preparation of a matter for presentation to a tribunal</u>) (emphasis added).

The dangers of such tactical abuse were also recognized by the Texas Supreme Court in 1990, as set forth in another mandamus opinion vacating a trial court's disqualification of an attorney/witness:

> Comment nine to *Rule 3.08*, however, states that the rule is intended to serve as a disciplinary rule and that it is not well-suited as a procedural rule of disqualification. Likewise, the preamble to the Texas Rules of Professional Conduct states that the rules are not designed to be standards for procedural decisions. *See* TEXAS RULES OF PROFESSIONAL CONDUCT, Preamble para.[57]
>
> …
>
> **Comment ten to *Rule 3.08*, however, states that the rule should not be used as a tactical weapon to deprive the opposing party of the right to be represented by the lawyer of his or her choice because reducing the rule to such a use would subvert its [\*558] purpose.** *See also* TEXAS RULES OF PROFESSIONAL CONDUCT, Preamble at para. 15. **In order to prevent such misuse of the rule, the trial court should require the party seeking disqualification to demonstrate actual prejudice to itself resulting from the opposing lawyer's service in the dual roles.** *See TEXAS RULE OF PROFESSIONAL CONDUCT 3.08*, comment 10. [58]

As demonstrated herein, PGS' Motion to Disqualify Counsel is improper because it was brought purely for tactical reasons, as any pointed inquiry into PGS' ability to meet the strict elements for disqualification will reveal. Concomitantly, the 133rd District Court's order completely disqualifying the entire law firm of Lambright & Associates from serving even as pretrial counsel for TTSI in this case

---

[57] *Ayres v. Canales*, 790 S.W.2d 554, 557-558 (Tex. 1990) (emphasis added).

[58] *Id.* at 557-558 (emphasis added).

was an abuse of discretion made in complete disregard for governing case law, resulting in harm to TTSI (i.e., deprivation of counsel) for which it has no remedy of appeal.

### 3. PGS Fails to Meet Its Burdens to Prove that TTSI's Attorneys' Testimony is Necessary to Establish an Essential Fact on Behalf of Their Clients

PGS failed to adduce <u>any</u> evidence to establish its burden to prove that testimony from TTSI's attorneys is "…necessary to establish an essential fact on behalf of [TTSI]."[59] On the contrary, PGS' Motion to Disqualify concedes that "essential facts" are available from sources other than the testimony of TTSI's attorneys:[60]

> <u>Lambright & Associates' testimony will be essential to show the communications that took place between Lambright & Associates and DFW prior to the PGS contract award being terminated</u>. This testimony is the linchpin of Plaintiff's claims in this case, and goes to the very heart of the issues to be decided by the finder of fact: tortious interference.
>
> *The documents produced by Defendant in this litigation prove that such interference took place, and that it came from Lambright & Associates.*

If "the documents produced by Defendant in this litigation…" in fact "…prove that such interference took place…," and such documents have been produced, then how is the testimony of Lambright & Associates necessary to prove up "the

---

[59] *Supra* fn 53.

[60] *Exhibit 5, PGS' Motion to Disqualify Counsel, p. 8.*

very heart of the issues to be decided by the finder of fact: tortious interference"?[61]

As acknowledged by PGS in its Motion, TTSI produced the First Filed Suit Correspondence months ago.[62] There is no dispute as to whether such communications occurred, what was said, or to whom—it is all in those documents.

TTSI has never stated it needs or relies upon its attorneys' testimony to establish necessary facts on its behalf.[63] On the other hand, PGS has not established (nor attempted) to show which facts essential to its claims are only available from TTSI's attorneys. It is indisputable that the testimony of someone at DFW Airport who was involved in the First Filed Suit Correspondence is absolutely necessary to establish essential facts concerning the causation element of PGS's tortious interference claims.

TTSI's attorneys cannot provide such evidence; it is logically and factually impossible. Despite pointing this dispositive matter out to the District Court in its Response, Motion for Reconsideration and Rehearing, and at the two (2) oral hearings on the matter, the 133rd District Court inexplicably and without explanation ordered that "Lambright & Associates" was disqualified from

---

[61] *Id.*

[62] *Exhibit 5, PGS' Motion to Disqualify Counsel, p. 3, 8-10.*

[63] *Supra* fn 53.

representing TTSI in this case in any capacity. Considering this matter in its entirety, PGS' motion to disqualify TTSI's counsel was purely tactical and failed to meet the strict requirements set forth, supra.[64] Hence, the District Court's disqualification of Lambright & Associates, *en toto,* amounts to a clear abuse of discretion.

### 4. Disqualification is Improper Because the Purported Evidence to be Provided by TTSI's Attorneys is on an Uncontested Issue

No one disputes the fact that TTSI's attorneys drafted and sent notification letters at various times since the 129th District Court entered the first Temporary Injunction in the first filed lawsuit. What is "unknown" or "contested" and what cannot be established by evidence purportedly possessed by TTSI's attorneys is *why* the DFW terminated the relationship with PGS—i.e., causation.[65] PGS does not even attempt to do this; instead, it replaces "proximate cause" with *ipse dixit* in its improper tactical maneuver to separate TTSI from its attorneys.

Secondarily, what is "contested" is whether the complained of communications rise to the level of being tortious, and if so, whether TTSI was privileged or justified in making them. While TTSI and PGS may disagree as

---

[64] *Supra* fn 51, 52, 53, 54 and 55.

[65] *E.g., Exhibit 2, TTSI's Response to PGS' Motion to Disqualify Counsel, pp. 9-13 and exhibits referenced therein; Exhibit 6, October 6, 2014 Hearing Transcript,12:13-13:19, 14:15-17:5; Exhibit 8, TTSI's Motion for Reconsideration and Rehearing, pp.11-14 and exhibits thereto.*

to whether TTSI's attorney letters were, in fact, tortious, the communications are what they are, and it is in the province of the Court to determine whether such communications are actionable.[66]

### 5. *PGS Fails to Show It Will Suffer Actual Prejudice if TTSI's Attorneys are not Disqualified*

Likewise, other than conclusory statements, **PGS** offered no evidence to support the proposition that it would be prejudiced in the event PGS ends up calling TTSI's counsel to testify as to communications it had pertaining to DFW Airport. The Texas Supreme Court has clearly set a higher burden for those seeking to disqualify opposing counsel as an improper attorney/witness. On the other hand, Courts have universally recognized the prejudice suffered by parties, such as TTSI, who are wrongfully deprived of their constitutional right to the counsel of their choice.[67]

### 6. *Even if Disqualified from Trial Presentation, It is an Abuse of Discretion to Bar TTSI's Counsel from Pretrial Representation*

Even if the Court was within its discretion to disqualify specific member(s) of TTSI's legal team from representing TTSI at trial before a Jury, its proscription

---

[66] In tortious interference cases, whether an act is privileged or justified (and therefore not actionable) is a question of law. *Prudential Ins. v. Financial Rev. Servs.,* 29 S.W. 3d 74, 77-78 (Tex. 2000).

[67] *Supra* fn 53.

against the entire firm as to pretrial matters outside the presence of the jury was not. As held by the Supreme Court in *Anderson:*

> Anderson argues that Rule 3.08 does not prohibit Campbell's conduct because he did not represent Anderson in an "adjudicatory proceeding" within the meaning of the rule. Anderson contends that Rule 3.08 only prohibits a testifying attorney from acting as an advocate before a tribunal, not from engaging in pretrial, out-of-court matters such as preparing and signing pleadings, planning trial strategy, and pursuing settlement negotiations. We agree.[68]

Similarly, TTSI's counsel should be permitted to continue representing them in pretrial matters, with disqualification applicable only in the event this matter proceeds before a tribunal with an empanelled jury. PGS provided no factual or legal support for barring TTSI's counsel from participating in pretrial matters outside the presence of the jury. This is especially important considering that with no evidence of causation (or damages), PGS has no lawsuit from which TTSI's counsel could be disqualified from. The entire reason behind Rule 3.08 is to prevent juror confusion—which seems to be lost, here. Denying TTSI the counsel that has represented it these past several years regarding the DFW Airport dispute, which as amply demonstrated in the hearing record contains the same operative facts necessary for the presentation of the instant lawsuit, would be extremely prejudicial, not to mention an abuse of discretion and misapplication of the law.

---

[68] *Anderson Producing, Inc. v. Koch Oil Co.,* 929 S.W. 2d at 422.

### 7. Conclusion

It is axiomatic to the American judicial tradition that lawyers can write lawyers to other lawyers, cite to court records, provide copies of court documents that are otherwise publicly available, offer their opinions as to those documents, and ask others "to be guided accordingly." As a matter of law, such communication cannot (1) support disqualification of counsel, or (2) PGS' tortious interference claims in this case.

Regardless, PGS failed to meet its burdens to obtain a disqualification of counsel in this case because PGS has not and cannot show that (1) the testimony of TTSI's attorneys is necessary to establish an essential fact on TTSI's behalf, (2) that the matter concerns a contested issue, or (3) that it will suffer actual prejudice should TTSI's counsel not be disqualified or to at least be able to participate in pretrial proceedings (including depositions, motions, discovery and court hearings) outside the presence of a jury. In any event, disqualification under Rule 3.08 and the Texas precedent applying it is only concerned with avoiding avoid juror confusion. Texas Supreme Court precedent has shown that nothing in the disqualification rules prevents counsel from continuing to represent their client in pretrial proceedings, in or outside of the courtroom and outside the presence of the

jury. Given the years and volume of work put in by TTSI's attorneys in these cases, it would be extremely prejudicial to deprive TTSI of its counsel on a claim that by all means should be transferred to Judge Gomez' Court or disposed of altogether based on PGS' real evidence problems

The Court's order completely disqualifying the firm of Lambright & Associates from representing its client, TTSI, in any way, shape or form is a clear abuse of discretion committed without adherence to any guiding rules or principals. The entire disqualification order must be vacated; alternately, it should be set aside pending further proceedings and provisions made for Lambright & Associates, TTSI's long-time counsel in this case, to continue representing them in pretrial matters.

## PRAYER

FOR THESE REASONS, Defendant **TEXAS TECHICAL SERVICES, INC.,** respectfully requests that the Court grant its Petition for Mandamus and vacate Judge McFarland's order disqualifying the firm of Lambright & Associates from representing TTSI in the case below; alternately, that this Court instruct Judge McFarland to revise her disqualification order to permit Lambright & Associates to represent TTSI in all matters outside the presence of the jury, and any other relief to which it shows itself justly entitled.

**LAMBRIGHT & ASSOCIATES**

 /s/ Casey Jon Lambright
Casey Jon Lambright
State Bar No. 00794136
Andrew J. Mihalick
State Bar No. 24046439
2603 Augusta, Suite 1100
Houston, Texas 77057
(713) 840-1515
(713) 840-1521 (FAX)

**ATTORNEYS FOR RELATOR
TEXAS TECHNICAL
SERVICES, INC.**

## CERTIFICATE OF SERVICE

As required by Texas Rule of Appellate Procedure 6.3 and 9.5(b), (d), (e), I certify that I have served this document on all other parties—which are listed below—on January 7, 2014 as follows:

| | |
|---|---|
| Mark A. Junell<br>The Junell Law Firm<br>100 Waugh Dr., Suite 350<br>Houston, Texas 77057<br>(713) 213-1830 (FAX)<br><br>*Attorney for Plaintiff, Parking Guidance Systems, LLC* | o CM/RRR<br>o Facsimile<br>o Regular Mail<br>o Hand Delivery<br>o Efiling Manager |
| Hon. Jaclanel McFarland<br>133rd Judicial District Court<br>201 Caroline, 11th Floor<br>Houston, Texas 77001<br><br>*Respondent* | o Facsimile<br>o U.S. Mail<br>o CMRRR<br>o Courier/Hand Delivery<br>o Efiling Manager |

LAMBRIGHT & ASSOCIATES

/s/ Casey Jon Lambright

Casey Jon Lambright

State Bar No. 00794136

Andrew J. Mihalick

State Bar No. 24046439

2603 Augusta, Suite 1100

Houston, Texas 77057

(713) 840-1515

(713) 840-1521 (FAX)

**ATTORNEYS FOR RELATOR**

January 8, 2015

[Date]

# CERTIFICATION

I, the undersigned, certify that I have reviewed the petition and conclude that every factual statement in the petition is supported by competent evidence included in the appendix or record.

LAMBRIGHT & ASSOCIATES

/s/ Casey Jon Lambright
Casey Jon Lambright
State Bar No. 00794136
Andrew J. Mihalick
State Bar No. 24046439
2603 Augusta, Suite 1100
Houston, Texas 77057
(713) 840-1515
(713) 840-1521 (FAX)
**ATTORNEYS FOR RELATOR**

January 8, 2015
[Date]

# CERTIFICATE OF COMPLIANCE

As required by Texas Rule of Appellate Procedure 52.10(a), I certify that I have notified or made a diligent effort to notify all parties by expedited means (such as by telephone or fax) that this motion for temporary relief has been or will be filed. Furthermore, pursuant to Texas Rule of Appellate Procedure 9.4 (i) (3), I certify that according to the Microsoft word counting function, the foregoing brief consists of 7,818 words excluding the portions outlined in the foregoing rule, and therefore is within the mandated word limit.

LAMBRIGHT & ASSOCIATES
/s/ Andrew J. Mihalick
Casey Jon Lambright
State Bar No. 00794136
Andrew J. Mihalick
State Bar No. 24046439
2603 Augusta, Suite 1100
Houston, Texas 77057
(713) 840-1515
(713) 840-1521 (FAX)

**ATTORNEYS FOR RELATOR
TEXAS TECHNICAL
SERVICES, INC.**

*January 8, 2015*
[Date]

NO._____
IN THE COURT OF APPEALS FOR THE
_____ DISTRICT OF TEXAS
HOUSTON, TEXAS

_____

*In re Texas Technical Services, Inc.*
*Relator*

_____

**PETITION FOR WRIT OF MANDAMUS**

Original Proceeding from Cause No. 2014-16785
*Parking Guidance Systems, LLC v. Texas Technical Services, Inc.*
In the 133rd Judicial District Court of Harris County, Texas

_____

**APPENDIX**

| EXHIBIT NO. | DOCUMENT DESCRIPTION |
|---|---|
| 1 | Disqualification Order |
| 2 | TTSI's Response to PGS' Motion to Disqualify Counsel |
| 3 | Case Details Report (Cause No. 2014-16785, 133rd Dist. Court) |
| 4 | PGS' First Amended Petition |
| 5 | PGS' Motion to Disqualify Counsel |
| 6 | October 6, 2014 Hearing Transcript |
| 7 | December 8, 2014 Hearing Transcript |
| 8 | TTSI's Motion for Reconsideration and Rehearing |
| 9 | TTSI's First Amended Answer |
| 10 | Case Details Report (Cause No. 2012-64401, 129th Dist. Court) |
| 11 | *In re Sanders,* 153 S.W. 3d 54 (Tex. 2004) |
| 12 | *In re Villsanta,* 2011 Tex. App. LEXIS 7670 (Houston [1st Dist.] 2011, orig. proceeding) |

The appendix to the foregoing Petition for Mandamus relies upon evidence set forth in the following appendix, and consists of certified copies of court records and hearing transcripts, with the exception of Exhibits 3 and 10, which consist of true and correct case detail reports obtained from the Harris County District Clerk's website for filings in this case.

LAMBRIGHT & ASSOCIATES


/s/ Andrew J. Mihalick
Casey Jon Lambright
State Bar No. 00794136
Andrew J. Mihalick
State Bar No. 24046439
2603 Augusta, Suite 1100
Houston, Texas 77057
(713) 840-1515
(713) 840-1521 (FAX)

**ATTORNEYS FOR RELATOR
TEXAS TECHNICAL
SERVICES, INC.**


*January 8, 2015*
[Date]